IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEAN MCCARTHY, <br><br> Plaintiff, <br><br> v. <br><br> BAYHEALTH MEDICAL CENTER, INC., <br><br> Defendant. | Civil Action No. 22-1336-RGA |

MEMORANDUM OPINION

Gary E. Junge (argued), SCHMITTINGER & RODRIGUEZ, P.A., Dover, DE,

    Attorney for Plaintiff.

Stacy A. Scrivani, Alexis R. Gambale, STEVENS & LEE, P.C., Wilmington, DE; Lisa M. Scidurlo, STEVENS & LEE, P.C., King of Prussia, PA; Michael M. Greenfield (argued), Sasha A. Phillips, STEVENS & LEE, P.C., Philadelphia, PA; Theresa M. Zechman, STEVENS & LEE, P.C., Lancaster, PA,

    Attorneys for Defendant.

February 2, 2024

ANDREWS, U.S. DISTRICT JUDGE:

Before me is Defendant's Motion to Dismiss. (D.I. 20). I have considered the parties' briefing. (D.I. 21, 22, 24). I heard oral argument on January 4, 2024 on a group of cases, including the present action, involving religious discrimination claims with regards to Defendant's COVID-19 vaccine policy. (Hearing Tr.).[1] For the reasons set forth below, this motion is GRANTED in part and DISMISSED as moot in part.

## I. BACKGROUND

This case stems from the COVID-19 pandemic and a healthcare provider's efforts to respond to government vaccination policy. The Amended Complaint (D.I. 20) is the operative complaint and alleges the following facts.

On August 12, 2021, Governor John Carney ordered all Delaware state health care employees either to become vaccinated for the COVID-19 virus by September 30, 2021 or to submit to regular testing for the COVID-19 virus. In November 2021, the Centers for Medicare & Medicaid Services ("CMS") issued a COVID-19 vaccine mandate requiring certain health care facilities, including Defendant, to ensure their staff members were all either vaccinated against COVID-19 or had obtained medical or religious exemptions to taking the vaccine.

Pursuant to Defendant's vaccination policy, employees seeking religious exemption requests were required to submit forms explaining the religious beliefs that formed their basis of their objection to the COVID-19 vaccine. (*See* D.I. 18-1, Ex. A). Employees could attach additional materials, such as letters from religious leaders, to support their exemption request. (*Id.*).

---

[1] Citations to the transcript of the argument are in the format "Hearing Tr. at __."

Employees who had their religious exemption requests rejected, and continued to refuse the COVID-19 vaccine, were terminated on February 28, 2022. Plaintiff was one of these employees. Plaintiff subsequently filed the present suit raising religious discrimination claims against Defendant under Title VII. *See* 42 U.S.C. § 2000e. Defendant moves to dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6). (D.I. 20).

## II.  LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B. Failure to Accommodate

Title VII makes it unlawful for an employer to discriminate against an employee based on that employee's religion. 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination under Title VII based on a failure to accommodate theory, an employee must show that (1) the employee "held a sincere religious belief that conflicted with a job requirement," (2) the employee "informed their employer of the conflict," and (3) the employee was "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017). "Plaintiffs are not required to establish each element to survive a motion to dismiss; they must simply allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

A district court's inquiry into whether a plaintiff has plausibly plead the first prong of a prima facie religious discrimination claim is limited to determining whether the belief is (1) "sincerely held" and (2) religious within the plaintiff's "own scheme of things." *Welsh v. United States*, 398 U.S. 333, 339 (1970) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

4

With respect to the first prong of this inquiry, "[w]hether a belief is sincerely held is a question of fact." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 2021 WL 4399672, at *6 (E.D. Pa. Sept. 27, 2021) (citing *Seeger*, 380 U.S. at 185).

With respect to the second prong, determining whether a plaintiff's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). "[I]t is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Aliano v. Twp. of Maplewood*, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (citing *Fallon*, 877 F.3d at 490). "The notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief. *Africa*, 662 F.2d at 1035. "[T]he very concept of ordered liberty" precludes allowing any individual "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).

The Third Circuit has adopted the three *Africa* factors to differentiate between views that are "religious in nature" and those that are "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490–91 (quoting *Seeger*, 380 U.S. at 164); *Africa*, 662 F.2d at 1032. A judge must determine whether the beliefs in question (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) "are comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Fallon*, 877 F.3d at 491 (quoting *Africa*, 662 F.2d at 1032) (cleaned up).

The *Africa* court tackled the issue of analyzing non-traditional "religious" beliefs or practices by "look[ing] to familiar religions as models in order to ascertain, by comparison, whether the new set of ideas or beliefs is confronting the same concerns, or serving the same

5

purposes, as unquestioned and accepted 'religions.'" *Africa*, 662 F.2d at 1032 (quoting *Malnak v. Yogi*, 592 F.2d 197, 205 (3d Cir. 1979) (Adams, J., concurring)); *Fallon*, 877 F.3d at 491 (describing the process as considering "how a belief may occupy a place parallel to that filled by God in traditionally religious persons."). The *Africa* factors were adopted as "three 'useful indicia' to determine the existence of a religion" pursuant to this "definition by analogy" approach. *Africa*, 662 F.2d at 1032. Their applicability to a person who professes a more widely recognized, "traditional" religion is a little less obvious.[2] However, because individuals cannot "cloak" all personal beliefs "with religious significance," a court must still scrutinize whether a sincerely held belief, asserted by someone claiming a recognized religion, is sufficiently connected to their religion. *Id.* at 1035; *see Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023) ("[T]he issue in this case is not whether plaintiff has asserted a plausible claim that she has a personal religious faith. . . . Plaintiff does not claim that she has suffered unlawful discrimination because she believes in God. Rather, she claims that she has suffered unlawful discrimination because she was required to comply with the COVID-19 vaccination requirement. The critical question, therefore, is whether the complaint alleges sufficient plausible facts from which it could be reasonably inferred that being vaccinated against COVID-19 violates a tenet or principle of her religious belief.").

Of course, individuals may have religious beliefs which are not widely accepted within their religion. *See Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 708 (1981) ("The guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"); 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or

---

[2] Plaintiff follows a recognized religion that already meets the three *Africa* factors. (*See* D.I. 18 ¶ 17).

6

the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee."). Beliefs of this nature would, logically, fail to be sufficiently linked to the individual's claimed religion and need to satisfy the *Africa* standard to qualify as religious beliefs.

### C. Disparate Treatment

To establish a prima facie case of religious discrimination under Title VII based on a disparate treatment theory, an employee must show that (1) the employee is "a member of a protected class," (2) the employee "suffered an adverse employment action," and (3) "nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281–82 (3d Cir. 2001). Depending on whether the plaintiff proceeds under a pretext or mixed-motive theory, they must ultimately prove that their protected status was either a "motivating" or a "determinative" factor in the employer's challenged action. *Connelly*, 809 F.3d at 787–88.

## III. DISCUSSION

### A. Failure to Accommodate

At this stage of the case, only one issue exists—whether Plaintiff has sufficiently pled that the belief upon which his objection to receiving the COVID-19 vaccine was based is a religious belief. "[T]o adequately plead a 'religious belief,' a plaintiff must allege some facts regarding the nature of [his] belief system, as well as facts connecting [his] objection to that belief system." *Aliano*, 2023 WL 4398493, at *5. "In other words, [he] must demonstrate that [his] objection arises from a subjective belief that is tied to [his] belief system which meets the *Africa* factors." *Id.* (citing *Africa*, 662 F.2d at 1032; *Fallon*, 877 F.2d at 492–93 (concluding that

7

the plaintiff's "anti-vaccination beliefs are not religious" but providing "[t]his is not to say that anti-vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can, and in those circumstances, they are protected")); *see also Brown v. Child.'s Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) ("[I]t is not sufficient merely to hold a 'sincere opposition to vaccination'; rather, the individual must show that the 'opposition to vaccination is a religious belief.'" (quoting *Fallon*, 877 F.3d at 490)); *Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023); *Ellison v. Inova Health Care Servs.*, 2023 WL 6038016, at *6 (E.D. Va. Sept. 14, 2023) (A plaintiff should "provide[] sufficient allegations regarding [their] subjective personal beliefs, how those beliefs are related to [their] faith, and how those beliefs form the basis of [their] objection to the COVID-19 vaccination."). Defendant argues that Plaintiff's objection to the vaccine stems from Plaintiff's personal moral code rather than from his religious beliefs.[3] (D.I. 21 at 7–15; D.I. 24 at 5–9).

Plaintiff's exemption request form states, "[A] Christian sincerely believes that his or her body is the living temple of the Holy Spirit of God," and that "we are commanded to present our bodies as a living sacrifice, which is to be holy and pleasing to God. (D.I. 18-2, Ex. A, at 5–6 of 9 (citing 1 Corinthians 6:19 ("Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own."); Romans 12:1 ("Therefore, I urge you, brothers and sisters, in view of God's mercy, to offer your bodies as a living sacrifice, holy and pleasing to God"))). He asserts that "presenting and keeping our bodies

---

[3] Defendant does not challenge Plaintiff's assertion that his religious faith of Christianity meets the *Africa* test. Rather, Defendant argues the beliefs on which Plaintiff's objection to the vaccine is based are secular beliefs based on Plaintiff's personal moral code, as opposed to religious beliefs that form a part of Plaintiff's Christian faith. (*See* D.I. 21 at 7–15; D.I. 24 at 5–9). I therefore address only the questions at issue: whether Plaintiff has sufficiently connected his objection to the vaccine to a religious belief tied to his Christian faith or whether the beliefs that form the basis of Plaintiff's objection would otherwise satisfy the *Africa* standard.

8

in this way, is quite literally, part of how we worship our God." (*Id.* at 6 of 9). He argues, "[F]or someone to ask us to put something into our body that we are uncomfortable with, is antithetical to the very core belief system that we hold." (*Id.* at 6–7 of 9). Plaintiff explains that Christians "are to allow [our] inner peace to 'rule in our hearts' at all times" and "are to make decisions that do not violate that leading of peace." (*Id.* at 8 of 9 (citing Colossians 3:15 ("Let the peace of Christ rule in your hearts, since as members of one body you were called to peace. And be thankful.")))). He continues, "If there is something that makes us uncomfortable, and we don't have a peace about it in our hearts, we are to avoid that thing." (*Id.*). With respect to the COVID-19 vaccine, Plaintiff states, "I do not have peace about it whatsoever" and "[b]ecause of that, I simply [cannot] place this vaccine inside of my body, which I believe is the temple of the Holy Spirit of God." (*Id.*)

Plaintiff's belief that he is forbidden from doing something Plaintiff himself is "uncomfortable with" is akin to asserting the type of "blanket privilege" that does not qualify as a religious belief under *Africa*. "[T]he very concept of ordered liberty" requires this result. *Africa*, 662 F.2d at 1031. Plaintiff's analogy to "asking a Muslim man to put pork in his body" is inapt. (D.I. 18-1, Ex. A, at 7 of 9). The specific prohibition against the intake of meat of one particular animal presented by this tenet of Islam does not rise to the level of allowing an individual 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Yoder*, 406 U.S. at 215–16).

Several other district courts handling similar religious discrimination cases involving the COVID-19 vaccine have found beliefs similar to the one Plaintiff expresses to amount to "blanket privileges" that do not qualify as religious beliefs. *See, e.g.*, *Lucky v. Landmark Med. of Mich., P.C.*, 2023 WL 7095085, at *4–7 (E.D. Mich. Oct. 26, 2023); *Ellison*, 2023 WL 6038016,

9

at *5; *Ulrich v. Lancaster Gen. Health*, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023); *Blackwell v. Lehigh Valley Health Network*, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023); *Finkbeiner*, 623 F. Supp. 3d at 465.

Plaintiff's counsel argued that whether a belief amounted to a "blanket privilege" presents an issue of sincerity that should be reserved for a jury. (Hearing Tr. at 33:3–14). The *Africa* court, however, indicated that a principal reason that courts engaged in the practice of making "uneasy differentiations" between religious and nonreligious beliefs was to prevent any individual from retaining a "blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *See Africa*, 662 F.2d at 1031. I find it proper to consider this question when dealing with religiosity. As noted above, other district courts have likewise examined the "blanket privilege" question at the motion to dismiss stage.

Plaintiff's claim is not saved by his exposition of the underlying cause of his discomfort regarding the vaccine:

> My wife, my five young children and I, have taken other vaccines, but I have been able to make that decision with the ability to evaluate years, and in fact, many decades[,] of the effectiveness of those vaccines. I do not have a problem with putting some medicines or vaccines into my body that have been proven over time to 1) be effective and 2) to have no adverse medical effects. This vaccine has not had the time or track record, as of yet, to provide this comfort level to me. IN fact, I personally know multiple people who have had very adverse reactions to this vaccine. One person in particular is a close family friend of mine that had no prior health issues, but after receiving the [COVID-19] vaccine, was diagnosed with Pericarditis. He and his family have had, and are still having[,] multiple severe difficulties in their life as a result of this. This man is of similar age to me. . . .
> . . . .
> I will summarize a practical articulation as to where I stand on this issue. I am not against vaccines in general. I am potentially not even against this [COVID-19] vaccine. There simply has not been enough time and documented results of this vaccine to give me a comfort level that it is something that me, or my family[,] should put into our bodies. As such, I [cannot], in good conscience, receive this vaccine into my body.

(D.I. 18-1, Ex. A, at 7–9 of 9). Plaintiff's statement that he is "potentially not even against this [COVID-19] vaccine" demonstrates that his religious beliefs do not contain a teaching prohibiting him for receiving the vaccine. (*Id.* at 9 of 9). Plaintiff's objection is "predicated fundamentally on [his] concerns with the safety of the vaccine." *Passarella v. Aspirus, Inc.*, 2023 WL 2455681, at *5 (W.D. Wis. Mar. 10, 2023). Plaintiff does "not articulate any religious belief that would prevent [him] from taking the vaccine if [he] believed it was safe." *Id.* Plaintiff's medical beliefs do not qualify as religious beliefs under *Africa*. "It takes more than a generalized aversion to harming the body to nudge a practice over the line from medical to religious." *Geerlings*, 2021 WL 4399672, at *7; *see also Fallon*, 877 F.3d at 492. "The notion that we should not harm our bodies is ubiquitous in religious teaching, but a concern that a treatment may do more harm than good is a medical belief, not a religious one." *Geerlings*, 2021 WL 4399672, at *7 (quoting *Fallon*, 877 F.3d at 492) (cleaned up).

At oral argument, Plaintiff's counsel took the position that "[h]arming my body is the religious belief" expressed by Plaintiff. (Hearing Tr. at 34:15–35:12 ("[I]f I believe [the vaccine] is going to cause long-term harm to my body, then my truly-held religious belief is that my body is a temple of the Holy Spirit, and I should put nothing in my body that's going to harm it. That's religious belief.")). Plaintiff's counsel effectively seeks to "cloak[] with religious significance" Plaintiff's concern that the vaccine may harm his body. *Africa*, 662 F.2d at 1035. The Third Circuit has already rejected such a position. *Id.* (explaining "[t]he notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief). Several other district courts handling similar religious discrimination cases involving the COVID-19 vaccine have also found such medical judgments do not qualify as religious beliefs. *See, e.g., McKinley v. Princeton Univ.*, 2023 WL 8374486, at *4 (D.N.J.

11

Dec. 1, 2023); *Ellison*, 2023 WL 6038016, at *5; *Winans v. Cox Auto, Inc.*, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023); *Ulrich*, 2023 WL 2939585, at *5; *Passarella*, 2023 WL 2455681, at *5–7; *Geerlings*, 2021 WL 4399672, at *7; *contra, Aliano*, 2023 WL 4398493, at *8–9.

For the reasons stated above, I find Plaintiff's Complaint does not plausibly allege that Plaintiff's objection to receiving the COVID-19 vaccine was based on a sincerely held religious belief. At oral argument, Plaintiff's counsel agreed that, in the event that I found a plaintiff had not adequately pled a religious belief, dismissal with prejudice was the proper path forward. (Hearing Tr. at 65:1–9). I will therefore dismiss Plaintiff's failure to accommodate claim with prejudice.

### B. Disparate Treatment

Defendant argues that Plaintiff has failed to sufficiently plead a religious discrimination claim under Title VII based on disparate treatment. (D.I. 21 at 15). Plaintiff states that he has not yet pled disparate treatment. (D.I. 22 at 20). I agree with Defendant that Plaintiff's assertion of "differential treatment" presents some confusion about whether a disparate treatment claim has been raised. (D.I. 24 at 9 n. 22). Nevertheless, since Plaintiff states he is not now pleading disparate treatment, I accept that he is not, and I will dismiss Defendant's argument as moot.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 20) is GRANTED in part and DISMISSED as moot in part.

An appropriate order will issue.